EHRGOTT *v.* FORGOTSTON *et al.*

(*Superior Court of New York City, General Term.* January 11, 1892.)

USURY—WHAT CONSTITUTES—CONTINUING TEMPORARY INJUNCTION.

Defendant, doing business under the name of the Lincoln Loan & Guarantee Company, on being applied to by plaintiff for a loan, indorsed her notes at four months for $300, and gave her a letter to a bank, which discounted the same; defendant taking as security a chattel mortgage for $405, which included $105 in fees for indorsing and guarantying the notes. *Held,* in an action to enjoin foreclosure of the mortgage on the ground that the transaction was a mere device to cover usury, that a temporary injunction would be continued until the trial.

Appeal from special term.

Action by Levenia Ehrgott against John S. Forgotston and others to enjoin the foreclosure of a chattel mortgage. Defendant appeals from an order continuing a temporary injunction. Affirmed.

The following opinion was rendered by McADAM, J. at the hearing at special term:

"The defendant conducts what he calls the 'Lincoln Loan & Guarantee Association,' and makes loans to persons in financial needs and straits. The plaintiff applied to him for a loan of $300, and this followed: Two notes were made by the plaintiff,—one for $100, payable in two months, and the other for $200, payable in four months. The defendant indorsed on the back of the notes, 'The Lincoln Loan & Guarantee Company,' the name under which he does business, and gave the plaintiff a letter to the Mount Morris Bank, and that institution discounted the notes at lawful rates, and gave the plaintiff $300, less the discount. Before indorsing the notes the defendant took unto the so-called Lincoln Loan & Guarantee Company a mortgage for $405 to secure $300 on the notes, and $105 in fees in indorsing and guarantying the notes. After maturity the notes were not paid, and were taken up by the Loan & Guarantee Company, which now holds them. The so-called company undertook to foreclose the chattel mortgage, and the present action is to enjoin the foreclosure on the ground of usury, alleging that the defendant was really the lender of the money, and the circumlocutory scheme a mere subterfuge adopted to hide the offense.

"1. It is familiar law that a person may, under circumstances similar to those stated, loan his credit, and charge what he pleases for it, (*More* v. *Howland*, 4 Denio, 264, 1 Edm. Sel. Cas. 371; *Ketchum* v. *Barber*, 4 Hill, 224, 7 Hill, 444;) and is equally well established that, if the transaction (no matter what form it assumes) is a mere device to cover usury, courts will not allow the drapery of form to hide the truth, but deal with the matter in its true light, according to the fact. There are circumstances in this case, significantly strong, which entitle plaintiff to the temporary equitable relief she seeks. The sum charged was outrageously excessive. The plaintiff was imposed upon, advantage was taken of her circumstances, and her worldly goods were mortgaged to make sure the payment of over 100 per cent. interest in addition to principal. At this rate the borrower is verily the slave of the lender.

"2. There is no such entity as the Lincoln Loan & Guarantee Company. It is neither a corporation nor joint-stock company. It is an alluring name to invite the needy. It means J. S. Forgotston,—nothing else. The mortgagee, having no legal existence, is mythical; cannot legally foreclose a mortgage, or authorize others to foreclose it. Nor can the defendant foreclose it, as the mortgage was under seal, and not made to him.

"3. The name used by the defendant is notice to the world that he makes loans as well as gives guaranties; and it is a question here whether he did not in point of fact make the loan, using the bank as his medium or agent, merely.

"4. If the defendant is allowed to foreclose the mortgage, the plaintiff's home will be broken up, and an injury done, not easily estimated in dollars and cents. On the other hand, enjoining the foreclosure until the facts can be determined at the trial can do the defendant no great harm; and he has certainly received enough in the way of interest to compensate him for the delay. The plaintiff has given security to pay all damages the defendant may sustain, and the mortgage continues upon the property as before. To dissolve the injunction might imply that courts look with favor upon 100 per cent. loan and guaranty offices, when they are in fact a growing evil, calculated to make the poor poorer, by engulfing them in debt. The motion to continue the injunction until the trial will be granted."

Argued before FREEDMAN and GILDERSLEEVE, JJ.

*Jas. C. de la Mare*, for appellant.  *Clark Bell*, for respondent.

PER CURIAM. The order appealed from is affirmed, with $10 costs and disbursements, upon the opinion of the court below, excepting only the state-

ment, "Nor can the defendant foreclose it, as the mortgage was under seal, and not made to him;" and as to the correctness of this proposition no opinion is expressed.